Our first case for today, 2015-1244 Enfish v. Microsoft. Mr. Armon, please proceed. Good morning, may it please the court. My name is Orion Armon, partner with Cooley on behalf of Enfish. I'll address the issue of subject matter eligibility first, as that issue affects every single one of the five claims on appeal. Before my time expires, I'd also like to reach an issue of first impression regarding the estoppel effect of Section 315e2. Reversal would be appropriate if the court finds for Enfish on the 101 issue and any one of the other issues presented in this appeal. Turning to 101 first, the appeal claims solve a specific technological problem that's unique to computer database technology. The specification describes the technological problem. At A218, column 2 of the patent, this is the 604 patent, it states, the structural requirements of current databases require a programmer to predefine a structure and subsequent data entry must conform to that structure. This is inefficient where it's difficult to determine the structure of the data that will be entered into the database. The claimed inventions solve that problem. Again, at A218, column 2, line 27 to 29, the claims cover a database that does not require a programmer to preconfigure the structure to which a user must adapt data entry. And the solution that's claimed in the two patents in suit is a single table self-referential database. At A221, column 7, lines 16 to 23, it states, new columns may be easily appended to the table 100 by creating a new column definition record. The new column is then immediately available for use in existing records. And importantly, the claimed single table self-referential structures are recited in each of the five appealed claims. You'll see those structures described at pages 24 and 25. Do I understand right that while that's not expressed in claim 17, it's part of the claim construction of claim 17, and in that one, self-referentiality is actually required for all columns, whereas in the others, just for a single column? That's correct, Your Honor, and defendants did not appeal the claim construction for that means plus function claim term. In claim 17, the court found that the means for configuring said memory according to a logical table required the self-referentiality. So as to all columns, whereas claims 31 and 32, it just requires it for a single? Am I remembering that right? Your Honor, that wasn't an issue that was briefed, and I don't recall specifically how it was required. The claim language says at least one of said logical rows has an object ID equal to the object ID 2, I assume I should say, of a corresponding one of said logical columns. Yes, so that issue was not one that was at issue below, and I don't recall specifically whether in claim 17 the algorithm required every single row and column to have that feature. Is your argument under 101 primarily on what we'll call the second prong of the Alice test, or are you arguing that the lower court was wrong, that sort of either prong of the Alice test is satisfied in this case? Judge Moore, our view is that the court erred on both prongs of the Alice test. Well, you only have to win on one of them to protect, right? If I can speak briefly to each one. As to Mayo or Alice step one, Justice Rehnquist first cautioned in Diamond v. Deere that any claim can be generalized or paraphrased to such a high level of generality that there's nothing patent eligible. In this case, the district court characterized the claimed inventions as the concept of organizing information using tabular formats. The background of the invention clearly distinguishes other types of databases. This was a somewhat crowded field of art, and the appealed claims recite a very specific single-table self-referential database structure. And our view in light of Justice Rehnquist's guidance in Diamond v. Deere that's been echoed in the other Supreme Court cases, including Mayo and Alice, is that claim scope plays an important role in Alice step one. And claim scope at some level needs to be considered when describing the invention. Our view is that if the district judge had characterized the claimed inventions as a single-table self-referential database, there would have been no need to move to Mayo step two. However, were the court to accept the district judge's characterization or any one of the defendant's six characterizations regarding the alleged abstract nature of the claimed inventions, at step two, the court should have but failed to grapple with the claimed single-table self-referential data structure. What the district court did after independent research was conclude that rows with headers – I'm sorry, tables with header rows were conventional and cited textbooks going back 22 to the ancient Sumerians. Well, there's no dispute that data has been stored in tables for thousands of years. But this case is about claims that require a very particular table structure, a single-table self-referential table structure. And neither the defendants nor the district judge offered any evidence, and there is no evidence in the record that that particular structure that solved the problem I identified at the outset of my argument was conventional. Can I just ask, suppose – I don't think that this is in dispute, but for all but claim 17, the self-referentiality is required for just one column. So why is, let's say, conventionality not apparent when you think about having a table in which all you need is a single column – or I guess, yes, a single column with the same identifier, let's call it, as a single row? So, Your Honor, I think that that raises an issue where the district judge was confused. There are two limitations in claim 31 and also dependent claim 32. Right. One limitation is the limitation that requires – Don't talk over me. You cannot talk over me. I'm sorry, Your Honor. The first one says a single column has to have a row corresponding to it, and the other one says there has to be a row that contains, assuming each means kind of every here, which seems to be the assumption, that column information about all the columns in a single row. So why – that does not require the kind of complete self-referentiality that I think the claim construction of claim 17 does, in fact, require. So if you focus just on the limited self-referentiality that's in claim 31 and 32, why does that satisfy the step two of Alice? Your Honor, Anne Fish's position is that because there's no evidence in the record that even a single column defined as a row was conventional at the time that these patents were filed, that it would still satisfy step two. And so importantly, the district judge focused on the portion of claim 31 that recites a single row defining all columns, which for purposes of our argument can be akin to a header row. But what the district court recognized in its claim construction order, and the defendants had also admitted, and of course is our position, is that it's the next portion of the limitation that requires the object identifier equality. Actually, the preceding portion. I'm sorry. It comes first. It's that next aspect of the claim that actually requires the self-referentiality. The district judge had acknowledged that. I believe that the judge was correct at A266, note two. Can you tell me what are the benefits to the computer, the memory, the speed, the efficiency, the retrieval? What are precisely the benefits that flow from the self-referentiality, which is the claimed novelty of the data structure? Your Honor, the specification identifies three benefits. The first benefit that was identified was smaller memory requirements. Second was faster data access and retrieval. But the third and the one that I think the most important improvement is the fact that the claimed inventions allow the database to be changed on the fly. In other words, the database is not static anymore. It's not a case where you predefine all of the fields in the database and are then stuck with it and have to literally take the thing down and turn it off to re-architect it. You are now able to do this as described in the specification at any point. And I see I'm in my rebuttal time, so unless there's more questions, I'll yield. That's fine. Mr. Campbell? Good morning. If I may please the Court, my name is Chad Campbell. I'm here with Ted Winsett. We represent Microsoft, I serve Intuit, and Jack Henry. I'm also joined by Mr. Bill Brown, who represents SAGE. I'd like to address first the 101 issues and then, time permitting, there are a couple of new items that showed up in the grade brief that I would like to address as well. Under Section 101, Alice teaches, and this Court's precedents also confirm, that the important thing we need to do is to look at what is claimed and whether the claims are recited in an abstract way. I'd like to focus... I don't think it's... Sorry. You're going to say the same thing I am, so go ahead. No, you go. I don't think that Alice says whether the claims are recited in an abstract way. Do they? Doesn't Alice say whether you're attempting to claim an abstract idea? Yes. It's not the nomenclature, right? It's not the lexicography that's the problem if that's too abstract. That would go to indefiniteness, wouldn't it, theoretically? Yes, Your Honor. What I'd like to address, however, is why here the claims do address and are too abstract under the Alice test. Referring first to the self-referentiality, which is the alleged invention that, in Fish says, makes this a technological improvement that takes it outside the reach of Alice, we have claims that simply recite a computer and a memory. They're generic. There's nothing specific about them. Once we get beyond that, we're not even limited to a database. The claims simply say that you need a computer and a memory that's going to store and retrieve information. It could be a database, but it also could be any kind of a... The claims are not directed to hardware. They're directed to a way in which computers can function better, in particular just to focus on self-referentiality. An organization of information stored in the usual way in a computer where there's no necessary relation between the physical location of bits of memory, magnets, call them, and the logical relation of what's stored with this self-referentiality structure to the internal organization of the information. Why is that, to take in Alice two-step terms, why is that directed to an abstract idea as opposed to an improved functioning of the computer? The improvements that are identified in the specification are threefold. They include smaller memory requirements, faster search times, and more flexibility. Those improvements come from something that's taught in the specification, allegedly, but it does not translate into the claims. If I could just walk the court through why that's so, to directly answer the question, I would take you first to column one, where the patent teaches what was wrong with relational databases. In a relational database, if we were to do a database of the court, for example, we would have many tables. We'd have a table for the judges. Let me ask you this. If you were the first person to come up with the idea of relational databases, and you claimed them in a fairly good degree of detail, is that patent eligible? It would certainly be a very different case from this one. I think I at least need a better answer than that. Look, you know perfectly well that there is tremendous uncertainty about what constitutes an abstract idea. Most of our cases, and all of the Supreme Court cases, have been about objects of the claims that are easily distinguished from this one. The object of this claim is a kind of software improvement in computer functionality. It is something like a fresh question for us. At least personally speaking, I need help in understanding how to think about the Supreme Court abstract idea concept when the whole point from beginning to end of the claim is an improved internal process in the computer using completely old hardware. I would take the court to the Versada case. In that case, Claim 17 recites a series of steps that eventually lead you to coming up with a price. However, nested within those limitations are some data structures. See, but that's one of the cases, like almost all of our post-Alice cases, in which it's perfectly easy to say that the object of the claim was the creation of legal intangibles, which is contractual relations to people. We don't have that. So I'd like to put those cases aside. I don't think, tell me if I'm wrong, that we have a case that is specifically about internal processes of a computer using old hardware that make the computer function better. With respect, I would still invite the court to look at Versada and look at Claim 17. But Versada is about basically a business method that was very, very typical and could have been done on the street. And what Versada's patent did was make it work faster and better on a computer, but it didn't improve the computer. I mean, I think that case, I agree with Judge Schronder. That case is of very little relevance to us here because what we're trying to decide, and that's why I ask you about the relational databases, is whether those are something specific to the computer world that are novel and are patentable, as opposed to things like pricing or guarantees for online purchases and things like that, which had hundreds of years of history in some instances of being done just person to person and were somehow done quicker or in a different way on a computer. These type of databases I don't see as having been done prior to the computer world. So can you give me another try on if you have the prior art relational databases, and not in some very general sense of using tables with tabs and columns on a computer, because that seems abstract to me, but defined in a certain way of X number of databases working relationally in a certain way, the way the prior art works. Why wouldn't that be patent eligible? If we had a relational database and you were claiming the relational database techniques, you would be far less abstract than the claims are here. And if I could just have the court indulge one comparison to relational databases and the claims here, it would be this. The claims or the specification teaches that the benefit that you get from this invention is to leave all of the relational database rules aside. Instead of having many tables where you try to cram like things together, you are supposed to throw everything into a single table, a single logical table. Any kind of record can go in there, and therefore it's going to be a sparse matrix. You're not going to try to pack everything in like a relational database would. So it's a new kind of database. The specification suggests that it's different than a relational database. And the question then becomes—we think this is the critical question—is that teaching part of the claims? We suggest the answer is no for two reasons. Well, let's—I think I'm not sure you can answer that, but I'm not sure I agree with you on that. It does seem that there's enough in the claims, particularly the self-referentiality, to at least bring in what's in the specification. So there's two reasons. The claims say you need a table. We know from the court's precedence that a table means two or more. For example, let's say we had a relational database structure for the court here, and we had 1,000 tables. And all we did was to take one of those 1,000 and change it to be a table like what's in the claims, so that we have 999 relational tables. This doesn't sound at all like an eligibility argument to me. It sounds like you're going someplace entirely different than 101. All I'm saying is that the assumption underlying the court's question that self-referentiality, as taught in the patent, with a single table, a single table that holds all of the data, is not a requirement of the claims. It says a table, and therefore— Why is that a 101 argument? I mean, that sounds like a written description argument. It's a 101 argument because the claims are done at an abstract level. You can have one or more tables. You just need one table with a couple of columns and a couple of rows. Okay. This is not being very helpful to me, so let's just assume I don't agree with your reading of the claims. I find that the claims actually specifically incorporate one database with self-referentiality. Why isn't that a new database that is patent eligible under 101? The question then becomes, with that assumption, what are you asking the computer, which is admittedly generic, to do? And here the computer is being asked to do things that people can do. A person could take data and organize it into two columns and two rows and have those rows be self-referential in the manner in which the claim is taught, and therefore— I get that. It is abstract. I see that. And I do think that, like Versad in some of those cases, if all you do is take some kind of method that's done and do it on a computer because it works faster and better, that that's ineligible. And I see some aspect of that here, but I also see your friend's argument that this doesn't just do that. It improves the way the computer itself operates. It takes less memory. It makes the database work better. And so, to me, this is not solely a case about taking something and doing it better on a computer. It's making the computer work better too. So I still don't understand, assuming I read the claims in a more specific way than you do, why that's not enough under Alice because the brunt of your argument is seeming to lead me to suggest—or to lead to the suggestion that computer software is just not patentable at all. That is not our position, that computer software is not patentable. So let me ask you this hypothetical then. Do you think that the invention in the specification would be patentable if claimed properly? If claimed properly, you certainly could have a patent. How would you do it here? You could start first by claiming exactly what was taught in the specification. That would be a good start. And you would need to get to something that you need to claim the invention from the point of view of what was different and new that made the computer better, faster, and stronger. Instead of claiming something that a person could do outside the context of a general purpose computer. That would make a difference. It makes a difference under the court's precedence. And here, again, the specification teaches something. It suggests that you're going to get benefits if you have a single very large table. The patent claims just talk about a computer and a table, which could be one or more. You might follow the requirements of the claim limitations for one of your tables, but not for others, and therefore miss the benefits entirely. The claims reach that far because they're drafted in an abstract way, and that's what leads us into the Alice problem. If I could just, I see that my time is running. There is a suggestion in the estoppel portion of the blue brief and in the gray brief that Microsoft and the other defendants should be, or Microsoft rather, should be estopped because the anticipation motion that was submitted to the district court could have relied on a publication reference for Excel 5.0 instead of what we actually did. What we did, and this is reflected in the court's decision below, is to submit live software to the court in a manner that the court could load and look at. If we disagree with you and the district court on the anticipation issue, we don't have to decide whether this estoppel would apply or not, do we? That is correct, Your Honor. We did, however, submit live software. It was an on-sale argument. That's what the court analyzed our evidence under. It wasn't a printed publication argument at all, so estoppel wouldn't apply. Let me be clear about one thing. Do we have to decide the estoppel issue anyway because you got summary judgment on a question of fact, and if we concluded that there existed a genuine issue of dispute that should have gone to a jury on that question of fact, estoppel is still a live issue below, isn't it? Yes, on remand it would be. It's still a live issue. But the district court hasn't addressed estoppel at this point. No, the judgment was entered before the PTAB finished the written decision, so there wouldn't have been a reason for the district court to address that at all. My time has expired. Okay, thank you. Mr. Armand, you have some rebuttal time. Thank you, Your Honor. If I may first, I'd like to turn back to a question that Judge Taranto asked. I'm sorry I wasn't prepared to answer earlier. At A2520, you'll find the description of the Claim 17. That's Exhibit 19. Yes, Your Honor. Exhibit 19, this is the source code algorithm for Claim 17 for means for creating the logic table. On page A325 of the appendix, which is the Section 101 opinion, in the discussion of 101 on Claim 17, the district court has a four-step algorithm that the court said was covered by means for configuring. And number three is for each column, store information about that column in one or more rows, et cetera, rendering the table self-referential. That's what I was thinking of, because that has a higher degree of self-referentiality than appears in Claims 31 and 32. Yes, Your Honor. That's what we asked for. That's what we got. We agree. If I may briefly touch on two other issues relating to 101. With respect, defendant's position regarding the single table or A table being multiple tables has changed. The defendant's claim construction brief is one of many places that A508 said that the invention required a single table. The position now is A table could mean any number of tables. When he says the invention requires a single table, isn't that really referencing what he thinks the invention is as disclosed by your specification? I don't remember reading that position as a claim. Maybe he was arguing that the claims ought to be limited to a single table because that's the only thing you disclose. Your Honor, you're right. I'd be speculating to guess whether that was where the defendants were going. I would also note, however, that at A table— Why aren't the claims, as he suggested, way broader than what you disclosed? What you've characterized for us really feels like something that's patent eligible, and your opposing counsel nearly admitted it, which I thought was very genuine of him to do. He said, listen, this would be a very different case if what was claimed was actually the invention that you people are all talking about, the thing disclosed in the spec. But the claims certainly feel quite a bit broader, which is not unusual and not necessarily going to be your undoing. But why don't you address that argument? Why aren't these claims a lot broader than what is, in fact, the thing that is the true invention that you want us all to be focusing on? Your Honor, I would point you to page 24 in our blue brief. The language in the specification is very direct and strong in characterizing the invention. That's the problem, though. The specification is very clear about it being one single table, but the claims don't say that. Do you agree that the claims are limited to one table? No, we do not. I believe that the language in the specification is limiting, Your Honor. No, you don't agree that the claims are limited, but you do believe the specification is limiting. No, I misspoke. I'm sorry. We believe that the claims are limited to a single table database. I apologize if I butchered that. I'd like to turn to the issue of estoppel and my minute that I have left. It's significant to this case to the extent that the panel reaches the estoppel issue that the defendants sought leave to brief summary judgment on Excel as a 102G issue. However, ENFISH had extensive, thousands of pages of evidence of conception and diligent reduction of practice, and we would have sworn back on Excel if they had presented it as 102G art. So they pivoted after the court gave them permission to brief the issue and presented it as 102B art. Prior use? I mean, public use? Is that what it was? Or was it on sale? On sale. It was on sale and substantiated with virtually only publications, user guide materials and other materials. Now, we concede in the briefing that the materials also included some source code, but it's also significant that in the IPRs, Microsoft used one of its other products, Visual Basic, to support its IPR challenges. We think remand is appropriate for fact findings on whether or not they reasonably could have raised Excel in the same way. Thank you, Your Honors. Okay. I thank both counsel. The case is taken under submission. Our next case for today.